MARSHALL FIELD & COMPANY, Appellant, v. T. R. WALLACE et al., Appellees.

1. Clerk of District Court: APPROVAL OF BONDS: EVIDENCE OF CARE. In an action against the clerk of the district court for negligently approving an insufficient administrator's bond, evidence of inquiries, made by the clerk, of business men in the community and of information received, before approving the bond, as to the extent and value of the estate of the deceased, and of the financial standing of the firm of which he was a member when he died, is admissible for the purpose of showing the degree of care and diligence exercised.

2. ———: ———: ———. But evidence of the manner in which the administrator and his sureties lived subsequent to the approval of the bond is not relevant.

3. ———: ———: SECURITY REQUIRED ONLY FOR ACTUAL VALUE OF PROPERTY. Where an administrator gives a bond in a penal sum exceeding the value of property coming into his hands, the clerk of the district court will not be liable for his approval of sureties who were insufficient for the amount of such bond, if they were at the time sufficient for a bond of the amount required by law, according to the real value of the property received by the administrator.

*Appeal from Cass District Court.*—HON. WALTER I.
SMITH, Judge.

WEDNESDAY, JANUARY 17, 1894.

THE plaintiff, a creditor of the estate of Jesse L.
Jones, deceased, brings this action upon the official
bond of the defendant, T. R. Wallace, as clerk of the
district and circuit courts of Cass county, to recover of
the defendant Wallace as principal, and the other
defendants as sureties, the amount due to the plaintiff
from said estate, upon the ground that the defendant
Wallace was, as such clerk, guilty of negligence in
approving the bond of the administrators of said estate,
to the injury of the plaintiff.    The case was tried to a
jury, resulting in a verdict and judgment for the de-
fendants.    The plaintiff appeals.—*Reversed.*

*L. L. De Lano* and *Willard & Willard,* for appel-
lant.

*H. G. Curtis,* for appellees.

GIVEN, J.—The record shows, without dispute, that
Jessee L. Jones and H. F. Ketchum were partners in
a mercantile business under the firm name of Jones
& Ketchum, prior and up to the time of the death of
Mr. Jones, who died intestate.    Soon after his death,
Mrs. Minerva C. Jones, his widow, filed a petition for
the appointment of administrators, stating the probable
value of the personal estate to be twelve thousand dollars,
and asking the appointment of Charles C. Jones, a son
of the decedent, and H. F. Ketchum, the surviving
partner as administrators.    The defendant Wallace, as
clerk, fixed the amount of the bond at twenty-four
thousand dollars, and accepted as sureties Mrs. Jones,
the widow, Phoebe C. Ketchum, wife of H. F.
Ketchum, and daughter of deceased, and M. Bella

Jones and Alice Aylesworth, also daughters of deceased, and issued letters of administration to said Charles C. Jones and H. F. Ketchum.

At the time of the decease of Mr. Jones the firm was indebted for merchandise to the plaintiff, to Carson, Pirie, Scott & Co., John V. Farwell & Co., and E. S. Jaffrey & Co., each of which claims were duly filed, approved and allowed, and have since been assigned to the plaintiff. The inventory shows that the only assets that came into the hands of the administrators were the cash on hand, book accounts, merchandise and store fixtures belonging to the firm. A life insurance policy was included, which belonged to the widow, and is not claimed to be assets, and will not be further noticed. The administrators reported the assets sold in accordance with the order of the court, and that three thousand, four hundred and seventy-nine dollars and twenty-five cents of the proceeds remained after paying funeral expenses, allowance to the widow, and other approved expenses. They also reported seven thousand, four hundred and thirty-eight dollars and ninety-four cents of the claims of the third class allowed, three thousand, six hundred and thirteen dollars and four cents of which were firm debts. They asked an order to pay forty cents on the dollar. The only evidence of any action taken upon this request was an indorsement in pencil on the back of the report, signed by the judge, as follows: "App. order to make payment of dividend of forty per cent." The creditors moved the court for an order that, as said funds in the hands of the administrators were derived from partnership assets, they be first applied in payment of partnership debts. And the administrators moved for a *nunc pro tunc* order correcting the record so as to show that they were authorized to pay forty per cent., as asked in their report. Upon full hearing, the motion of the administrators was overruled, and it was adjudged that of said fund they

pay to Carson, Pirie, Scott & Company, and to John V. Farwell & Company, in addition to the forty per cent. already paid them, fifty-four per cent. of the total amount of their claims, and to E. S. Jaffrey and Company and to Marshall Field & Company, ninety-four per cent. of the amount of their claims. The administrators failed to comply with this order, probably because they had previously exhausted the fund in paying forty per cent. upon all claims of the third class, regardless of whether or not they were firm debts. The estate being exhausted, and the administrators and their sureties insolvent and nonresidents of the state, the plaintiff is unable to force collection of its claims against them. It is evident that these sureties were insufficient at the time they were accepted and approved by the defendant Wallace, and the controlling contention is whether, in accepting and approving said sureties, he acted with the care and diligence which the law required.

The law, section 2362 of the Code, having vested clerks of the courts with power to approve, or disapprove, the bonds of administrators and executors,

1. CLERK of district court: approval of bonds: evidence of care.

it is required that they exercise reasonable care and diligence in the performance of that duty. In performing that duty they must not only act in the light of the extent and value of the estate, but also for the protection of creditors, and those entitled to distribution of the estate. The care and diligence which they are required to exercise are those which ordinarily careful and prudent persons would exercise in transactions of like importance.

On the trial the defendant, Wallace, was called in his own behalf, to testify to the inquiries he had made, and information that he had received, before approving the bond. He was permitted to testify, over the plaintiff's objections, to the estimate put upon the property of the deceased by the bankers with whom the deceased

did business. He was also permitted to prove by a number of business men who were in a position to know the fact, what the reputed financial standing of Jones & Ketchum and Jesse L. Jones was at the time of Mr. Jones' death. It will be observed that one of the administrators and three of the sureties were heirs of the deceased, and that the other surety was his widow. While the clerk was properly governed by the statement of the value of the assets made in the petition in fixing the amount of the bond, it was certainly proper for him, in determining as to the sufficiency of these sureties, to inquire further as to the probable extent of the estate and the interest of the sureties therein. The extent of the estate and their interest therein was one element from which to determine their solvency. While the clerk might not be excused for acting alone upon the reputed financial standing of the firm and of the deceased, it was certainly proper matter to be considered by him. We think there was no error in admitting either of these items of evidence.

II. Mr. Wallace was also permitted to testify, over the plaintiff's objection, as to the style in which C. C. Jones and his mother and sisters lived at times long after the approval of the bond. It might be questioned whether evidence as to the manner of their living, at and before the approval of the bond, was admissible. It is certainly clear that their style of living, several years after, could not have governed the defendant Wallace in the approval of the bond, and was not sufficiently specific to show their financial condition when the bond was given, nor that the plaintiff could have collected the claims in question from them. That they lived in high style and expensively does not necessarily indicate that collection could have been enforced against them. We think it was error to have admitted this evidence, and that its admission was prejudicial to the plaintiff.

III. The appellant complains of the refusal to strike from the answer an allegation that the defendant Wallace, "in good faith, and in the exercise of his judgment as clerk, believed that said sureties were amply good," etc. It is true that such belief is not a defense; but this allegation, taken in connection with what precedes it, was evidently not intended to plead good faith as a ⎮defense. With the seventh paragraph ·of the charge before them, the jury could not have understood that good faith alone was a defense. When the part of the answer complained of is considered in connection with the other allegations in the paragraph, we think there was no error in refusing to strike it.

IV. It will be noticed that the estate proved to be of much less value than· that stated in the petition for the appointment of the administrators.

3. ——: ——: security required only for actual value of property.

The court instructed as follows: "The bond taken of these administrators in this case was for twenty-four thousand dollars; but that bond was excessive, and the sureties thereon were sufficient, if they were at that time sufficient upon a bond large enough to secure the estate for the amount of property which is shown to have come into the hands of the administrators, to wit, four thousand, nine hundred and eleven dollars and sixty cents."

The appellant complains of this instruction, and contends that the defendants are liable, if the defendant Wallace did not exercise reasonable care in taking sureties for the amount named in the bond, even though they might be sufficient for the lesser amount. The lesser amount is all that came into the hands of the administrators, and all to which the plaintiff has a right to look for the payment of the claims in question, and, unless the negligence of the clerk has defeated the plaintiff in ·its recovery from that fund, his action has been without prejudice to the plaintiff. We conclude that, under the facts of the case, the instruction was without prejudice to the plaintiff, and is correct.

V. The appellant contends that the evidence shows, without conflict, that the defendant Wallace did not exercise reasonable diligence and care in approving the bond, and that, therefore, the court should declare, as a matter of law, that he is liable. The appellees contend that there is evidence from which the jury might find due care, and that, therefore, the question was properly submitted to the jury. We have not set out nor discussed the evidence on this question, as, for the error in admitting evidence, the judgment of the district court must be reversed. It is sufficient to say that we think the question was properly left to the jury.

VI. The appellees, while conceding that they can not take advantage of errors against them, nor ask affirmative relief, they not having appealed, contend that the plaintiff has shown no cause of action; that it appears that the plaintiff should not recover, and, therefore, a new trial should not be granted, even though erroneous instructions or rulings were made and given, as complained of by the appellant. Conceding the rule to be as claimed, which we do not determine, yet we are of the opinion that this case does not come within such a rule.

Our conclusion upon the whole record is that, for the reasons stated, the judgment of the district court must be REVERSED.